T.C. Memo. 2004-240

UNITED STATES TAX COURT

GEOFFREY K. CALDERONE, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3563-03L.              Filed October 19, 2004.

<u>John T. Mulhall III</u> and <u>Thomas E. Redding</u>, for petitioner.

<u>John T. Lortie</u> and <u>Kenneth A. Hochman</u>, for respondent.

MEMORANDUM OPINION

GERBER, <u>Chief Judge</u>:  Petitioner, pursuant to section
6330(d),[1] seeks review of respondent's determination to proceed
with collection (by means of levy) of petitioner's unpaid 1995
Federal income tax liability.  The issue for our consideration is

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at all relevant times.

whether, in the context of a section 6330 proceeding, petitioner is entitled to challenge the underlying tax liability for 1995. The resolution of this issue depends upon whether petitioner received a statutory notice of deficiency for his 1995 tax year or otherwise had an opportunity to dispute such tax liability. The parties agree that if we conclude that petitioner is entitled to challenge the underlying tax liability, we should remand this case to respondent's Appeals Office to conduct a hearing under the provisions of section 6330.

Background

The parties' stipulation of facts is incorporated by this reference. At the time of the filing of the petition in this case, petitioner resided in Fort Lauderdale, Florida. Beginning in the mid-1980s, petitioner employed Arthur F. Jacob (Mr. Jacob), a certified public accountant and attorney, to handle his tax and certain financial matters. Mr. Jacob, through 2002, had a power of attorney from petitioner. Petitioner trusted Mr. Jacob and relied on him exclusively with respect to all tax matters. For the tax years 1993, 1994, and 1996 specifically, Mr. Jacob represented petitioner before the Internal Revenue Service on many occasions. Any time petitioner received any document from respondent, he would immediately contact Mr. Jacob to find out what needed to be done. In addition, petitioner and Mr. Jacob often socialized together and had common friends.

Respondent, by means of a September 17, 1998, certified letter, sent a statutory notice (the notice) to petitioner and his former wife, Mary Elizabeth Connor (Ms. Connor), determining a 1995 income tax deficiency and additions to tax.  Respondent produced a copy of the notice addressed to petitioner, but no further proof of delivery.  Mr. Jacob received a copy of the notice.  At the time the notice was mailed, petitioner and Ms. Connor did not reside at the same address.  Although respondent contends that the notice was mailed to petitioner's home, petitioner claims to have never received it.  Petitioner claims to have seen it only years later in his attorney's office.  Thus, he did not petition this Court for a redetermination of the deficiency.

Ms. Connor received the notice of deficiency in or around September 1998.  Her affidavit states that she immediately spoke about the matter with petitioner and that petitioner indicated Mr. Jacob "had things under control", though petitioner and Mr. Jacob claim they did not speak about the notice during this period.

On September 22, 1998, however, Mr. Jacob did protect himself with respect to Ms. Connor by sending her a letter advising that his office had received a certified letter from the Internal Revenue Service (IRS).  Mr. Jacob's letter informed Ms. Connor that the certified letter contained "a proposed Notice of

Deficiency for tax year 1995" for petitioner and Ms. Connor, but that he would not be representing her. Mr. Jacob also sent a copy of his letter to petitioner. Petitioner, however, has no recollection of receiving the letter, and both petitioner and Mr. Jacob deny discussing it. On her own, Ms. Connor petitioned this Court seeking a redetermination of the 1995 deficiency determination.

With respect to petitioner, Mr. Jacob did not file a petition on his behalf or take any other action to advise him of his available options with respect to the 1995 notice of deficiency. Mr. Jacob attempted to convince the Court that it was not his normal practice to file petitions without being asked by the client, and the receipt of a copy of a notice of deficiency regarding a client for whom he held a power of attorney did not "obligate [him] to do anything".

Thus, the 1995 tax liability was never challenged by petitioner, and on February 4, 1999, respondent assessed the amount of income tax due for 1995 against petitioner. Respondent's internal documents show several unsuccessful attempts in 1999 and 2000 to try to reach Mr. Jacob regarding collection actions. On June 27, 2001, respondent issued a Final Notice of Intent to Levy (which petitioner did receive), advising petitioner of the proposed collection of his outstanding 1995 income tax liability. On July 9, 2001, respondent received a

Form 12153, Request for a Collection Due Process Hearing, which was submitted by Mr. Jacob, for petitioner's 1995 tax year.

In early 2002, Mr. Jacob told petitioner that he had been successful in resolving petitioner's income tax matters before respondent and that he owed no tax liability. Mr. Jacob had not in fact achieved such success, and, in or around May or June 2002, petitioner and petitioner's current wife began questioning the notices they were still receiving pertaining to the collection hearings. On September 9, 2002, petitioner contacted an Appeals officer at the IRS claiming this was the first time he knew the case was in Appeals. Petitioner discontinued Mr. Jacob's representation and retained Rutherford Mulhall, P.A., to represent him in further proceedings. In addition, petitioner filed suit against Mr. Jacob asserting various theories of negligence and malpractice.

Discussion

The parties agree that this case should be remanded for further consideration of the underlying merits of petitioner's 1995 tax liability if we hold that petitioner did not receive a 1995 notice of deficiency or otherwise have the opportunity to dispute the 1995 tax liability. This case presents a curious factual situation, because it appears that petitioner's representative (who held a power of attorney and upon whom petitioner relied for financial and tax matters) failed to

contest the notice or advise petitioner of the notice or his rights in regard thereto. The effect of this, according to petitioner, was that he did not receive a notice of deficiency or have the opportunity to dispute his 1995 income tax liability.

I. Legal Background

Section 6331(a) authorizes the Commissioner to levy on property and property rights of a taxpayer liable for taxes who fails to pay them within 10 days after notice and demand for payment. Sections 6331(d) and 6330(a), however, require the Secretary to send written notice to the taxpayer of the intent to levy and of the taxpayer's right to a hearing prior to the collection activity.

Section 6330(c)(1) requires that the Appeals officer obtain verification that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(2)(A) provides that the taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection actions, and alternatives to collection.

The underlying tax liability may be questioned if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). For purposes of section 6330(c)(2)(B), receipt of a statutory notice of

deficiency means receipt in time to petition this Court for redetermination of the deficiency asserted in such notice. Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. Section 6330(c)(2)(B) contemplates actual receipt of the notice of deficiency by the taxpayer. See Tatum v. Commissioner, T.C. Memo. 2003-115.

The parties agree that respondent has the burden of showing that petitioner either received the notice of deficiency or otherwise had an opportunity to dispute the tax liability.

II. Analysis

A. Receipt of the Notice of Deficiency

Respondent argues that the notice of deficiency was sent to petitioner's last known address and that petitioner failed to produce any evidence showing that he did not receive the notice of deficiency in a timely manner. However, petitioner points out that respondent has failed to produce any evidence that the U.S. Postal Service (USPS) attempted to deliver the notice of deficiency or that petitioner refused delivery.

Respondent also argues that petitioner's allegations are insufficient to override the "presumption of receipt" or delivery as described in Sego v. Commissioner, 114 T.C. 604, 611 (2000). Absent clear evidence to the contrary, USPS employees are presumed to properly discharge their official duties, justifying the conclusion that the statutory notice was sent and that

attempts to deliver were made in the manner contended by respondent. Id. Further, in the context of a section 6330 proceeding, taxpayers cannot defeat "actual receipt" by deliberately refusing delivery of a notice of deficiency. Id.; see also Hochschild v. Commissioner, T.C. Memo. 2002-195 (raising presumption of delivery when several attempts at delivery were made, and the notice went unclaimed).

However, the facts we consider here are more analogous to those in Tatum v. Commissioner, T.C. Memo. 2003-115. In that case, this Court found it significant that the USPS made only one attempt at delivery and that the taxpayer did not intentionally refuse delivery, distinguishing the case from Sego where there were multiple attempts to deliver and the taxpayer intentionally refused delivery. Id. Moreover, the taxpayers in Tatum credibly testified that they did not receive a notice or know the USPS was attempting to deliver one. Id.

In this case, even though it was shown that the notice was addressed to petitioner, respondent has not introduced evidence showing that the notice was submitted to the USPS for delivery at all. Unlike Sego, where it was shown that delivery was attempted several times, respondent has not shown a single attempt at delivery. If Postal Service employees properly discharged their official duties, respondent would have received a signed certified mail receipt or a returned notice of deficiency.

Respondent has not offered evidence of certified mail or of an attempt to deliver the notice of deficiency. Moreover, respondent has produced no evidence that petitioner intentionally refused delivery. Finally, petitioner's uncontroverted testimony states that he did not receive a notice of deficiency or know that the USPS was attempting to deliver one to him.

In light of (1) the absence of evidence of any attempted delivery by the USPS, a certified mail receipt, or an unclaimed or refused notice of deficiency, or (2) the uncontradicted testimony that petitioner did not receive the notice of deficiency, respondent has not shown that petitioner actually received the notice, despite the presumption of regularity in delivery.

B. Otherwise Had an Opportunity To Dispute

Respondent contends that petitioner had the opportunity to dispute the liability because Mr. Jacob timely received the notice of deficiency and could have filed a Tax Court petition on petitioner's behalf. Respondent also contends that petitioner was sent a copy of correspondence from Mr. Jacob to Ms. Connor regarding the notice. Further, respondent claims petitioner communicated with Ms. Connor after she timely received the notice.

Petitioner contends that Mr. Jacob's receipt of a copy of the notice of deficiency cannot be imputed to petitioner because Mr. Jacob did not forward it to petitioner, discuss it with petitioner, or file a petition with this Court. Petitioner also contends that there is no evidence showing that Ms. Connor specifically informed petitioner that she had received the notice of deficiency.

Regardless of whether petitioner was sent a copy of the letter that Mr. Jacob wrote to Ms. Connor, the evidence does not support a finding that petitioner actually received notification of the deficiency notice. Ms. Connor's claim that petitioner told her Mr. Jacob was taking care of the matter was presented in an affidavit, and respondent did not call her as a witness to provide petitioner the opportunity to cross-examine her testimony. Therefore, respondent has not adequately shown that petitioner knew about the notice.

The cases respondent relies upon in support of the position that a taxpayer can be held liable for an agent's act or failure to act are situations in which the principal claimed that the agent acted without authority or approval, but where the court ultimately found that the agent acted with such authority or approval. See Adams v. Commissioner, 85 T.C. 359 (1985); Kraasch v. Commissioner, 70 T.C. 623 (1978). However, these cases do not focus on the question of whether the taxpayer has the opportunity

to dispute an underlying tax liability when the agent fails to act or acts in a manner contrary to what is appropriate in the principal-agent relationship.

We find it curious that Mr. Jacob would notify the client's ex-wife stating he was not representing her and then never discuss the notice with the client. It would also be odd for the client, whose established practice was to contact his trusted adviser after receiving tax correspondence (and who socializes with that adviser), not to discuss the deficiency notice mentioned in a letter to his ex-wife.

Although Mr. Jacob testified that it was not his normal practice to file a petition in the Tax Court on behalf of a client without being asked by the client, we find his testimony to be inconsistent with facts indicating that Mr. Jacob exclusively represented petitioner before the IRS before the 1995 tax year. Moreover, Mr. Jacob's statement is self-serving and entitled to less weight, considering that at the time of the trial in this case, Mr. Jacob continued to be embroiled in litigation with petitioner. We also find incredible Mr. Jacob's contention that even though he had a power of attorney on file with the IRS, he was not obligated to act on behalf of his client when he received correspondence from the IRS, particularly when he knew that petitioner relied on him exclusively to resolve all tax matters.

Moreover, in 2002, Mr. Jacob advised petitioner that his 1995 tax liability had been resolved when in fact he had done nothing to resolve the underlying tax liability and knew that the matter was set for a collection due process hearing. While this deception in 2002 does not directly show that petitioner was prejudiced by Mr. Jacob's conduct (or lack thereof) in the period during which petitioner had the opportunity to dispute the underlying liability, it does demonstrate that Mr. Jacob was not forthright in handling petitioner's affairs and confirms that Mr. Jacob realized that he had an obligation to act on the matter sooner.

Under all of these circumstances, respondent's argument relying on petitioner's knowledge imputed from others is insufficient to show that petitioner had an opportunity to dispute the 1995 liability. Petitioner trusted and relied exclusively on Mr. Jacob to handle matters before the IRS while Mr. Jacob kept information from petitioner and was intentionally not representing petitioner's interest. Accordingly, petitioner did not otherwise have an opportunity to dispute the 1995 liability.

III. Conclusion

Respondent has not met his burden of showing that petitioner received the notice of deficiency or otherwise had the opportunity to dispute the tax liability. Thus, petitioner is

entitled to challenge the underlying tax liability.  As such, it is unnecessary to decide the remaining issue of whether respondent abused his discretion by denying petitioner's request to consider the underlying merits of the 1995 tax liability.  In accordance with the parties' agreement, this case will be remanded to respondent's Appeals Office to conduct a hearing in accordance with section 6330.

To reflect the foregoing,

<u>An appropriate order will
be issued.</u>